DISTRICT COURT OF THE UNITED STATES
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-182-FDW

| | |
|---|---|
| MICHAEL S. HARPER, | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) **ORDER** |
| TERRY LEMON, | ) |
| FNU WHITLEY, | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Terry Lemon, (Doc. No. 39), and on a Motion for Summary Judgment by Defendant FNU Whitley, (Doc. No. 47).

## I. BACKGROUND

### A. Procedural Background

Pro se Plaintiff Michael S. Harper, a North Carolina inmate currently incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina, filed this action on April 14, 2014, pursuant to 42 U.S.C. § 1983. In the Complaint, filed pursuant to 42 U.S.C. § 1983, Plaintiff alleged that he was subjected to the use of excessive force on January 17, 2014, while he was incarcerated at Lanesboro Correctional Institution. Plaintiff named as Defendants Terry Lemon and Casey Whitley, who were both correctional officers at Lanesboro at all relevant times. Plaintiff seeks compensatory and punitive damages.

On April 11, 2014, Defendant Lemon filed a summary judgment motion. (Doc. No. 39). On July 6, 2016, Defendant Whitley filed his own summary judgment motion, in which he has

1

incorporated and adopted the arguments made in Defendant Lemon's motion. (Doc. No. 47).
On July 13, 2016, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to both motions for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 49). Plaintiff did not respond to the summary judgment motions and the time to do so has passed.

**B.** **Factual Background**

**1.** **The Alleged Excessive Force Incident and the Summary Judgment Evidence**

**a.** **Plaintiff's Allegations**

In support of his allegations, Plaintiff has submitted his verified Complaint, in which he swears under penalty of perjury that the allegations are true. Plaintiff alleges that, while he was housed at Lanesboro Correctional Institution, on January 17, 2014, he was handcuffed and escorted to Defendant Lemon's office regarding a security threat group ("STG") association. (Doc. No. 1 at 4). When Plaintiff reached Lemon's office, his handcuffs were removed and, inside the office, Lemon and Whitley were present. (Id.). Lemon informed Plaintiff that he was being placed on a STG watch list because of his tattoos. (Id.). Plaintiff then told Lemon "that he wasn't talking about shit and to take him back to his cell." (Id.).

Plaintiff alleges that, immediately after Plaintiff's statement, Lemon assaulted Plaintiff, punching him in the right jaw and knocking him to the floor. (Id. at 5). Plaintiff alleges that Defendant Lemon "used excessive force by punching Michael Harper in the face when Michael Harper was not acting disruptive or aggressive." (Id. at 6). Plaintiff alleges that he lost consciousness for a second and awoke to Whitley kicking and stomping him on his side and back. (Id.). Plaintiff alleges that Whitley then dropped onto Plaintiff and slammed his head into

2

the floor, causing a laceration to his left eye. (Id.). Plaintiff alleges that Whitley then said to Plaintiff, "That's what you get for disrespecting an officer." (Id.). Plaintiff alleges that Defendant Whitley "used excessive force by stomping and kicking Michael Harper in the side and back repeatedly, and slamming plaintiff Michael Harper's head into the cement floor when Michael Harper was not acting disruptive or aggressive and while he was incapacitated by Defendant Sgt. Terry Lemons' punch to the face." (Id.).

Plaintiff alleges that he was treated at an outside medical facility for his injuries. (Id.). Plaintiff requests declaratory and injunctive relief, as well as compensatory and punitive damages. (Id. at 4, 8).

### b.  **Defendants' Summary Judgment Materials**

In support of the summary judgment motion, Defendants Lemon and Whitley rely on all pleadings and attachments and the affidavit of Lanesboro Superintendent David Mitchell, with exhibits. Specifically, Defendants rely on Exhibit B to Mitchell's Affidavit, which is a copy of the January 17, 2014, incident report, with witness statements, and photographs of Plaintiff after the incident. Defendants have also submitted, as Exhibit A to Mitchell's affidavit, the North Carolina Department of Public Safety ("NCDPS") Use of Force policy.

Mitchell states in his affidavit that he has been employed by NCDPS since 1988 and is presently employed as Lanesboro's Correctional Facility Administrator. (Doc. No. 40 at ¶ 2: Mitchell Aff.). Mitchell states that he is knowledgeable of the policies and procedures with the use of force, regularly reviews and approves use of force incident reports and investigations, and reviewed and approved the use of force in this case. (Id. at ¶¶ 5-8, 27-30). Mitchell asserts that there is no video footage of the incident. (Id. at ¶ 9).

According to Mitchell's affidavit, on January 17, 2014, Plaintiff was incarcerated on the

Moore Unit at Lanesboro and was handcuffed and searched for an illicit cell phone by the Prison Emergency Response Team ("PERT Team"). (Id. at ¶¶ 10-11). Finding no cell phone on Plaintiff, PERT Officers Siciak and Carver escorted Plaintiff to the office of the Facility Intelligence Officer ("FIO"), Sergeant Terry Lemon so that Lemon could assess Plaintiff for STG involvement or association. (Id. at ¶ 12). As FIO, Lemon was responsible for assessing inmates who are suspected of STG involvement by completing an inspection and interview with the inmate. (Id. at ¶ 13).

When the officers arrived at Lemon's office with Plaintiff, Lemon asked Plaintiff to remove his shirt so Lemon could view and assess his tattoos. (Id. at ¶ 14). Tattoos commonly indicate gang involvement by their color, appearance, and contents. (Id.). Tattoos are a "criteria" that Lemon adds to his overall assessment of an inmate's level of association with an STG. (Id.). Following Lemon's request, Siciak removed Plaintiff's handcuffs, Plaintiff removed his shirt, and Lemon evaluated Plaintiff's tattoos. (Id. at ¶ 15). Lemon then informed Plaintiff that he was being placed on the STG "Watch List" as a potential STG associate. (Id.). During this time, Officer Whitley was also observing the meeting between Plaintiff and Lemon. (Id.). According to the officers' witness statements, as soon as Lemon told Plaintiff that he would be placed on the watch list, Plaintiff became irate and began yelling and cussing at Lemon. (Id. at ¶ 16; Ex. B at 7-12). Lemon ordered Plaintiff to calm down and to stop cussing. (Id. at ¶ 16; Ex. B at 10, 11). Plaintiff refused and continued cussing at Lemon. (Id.). According to Lemon's witness statement, Plaintiff had his fists clenched and moved toward him quickly in an aggressive manner in an attempt to assault Lemon. (Id. at ¶ 17; Ex. B at 10-11). As he approached, Plaintiff was threatening Lemon. (Id.). Lemon stated during the investigation that he used an approved Control Restraint Defense Technique ("CRDT") strike to Plaintiff's left

4

biracial plexus area, which is the left-side of the chest near the shoulder, to stop and prevent Plaintiff's assault. (Id. at ¶ 18; Ex. B at 10-11).

According to Mitchell's affidavit, immediately following the strike, Officers Whitley and Siciak pulled Plaintiff away from his approach of Lemon and placed Plaintiff on the floor to stop and control Plaintiff. (Id. at ¶ 19; Ex. B at 7-8; 12). Plaintiff continued to resist the officers while on the floor. Siciak applied handcuffs to Plaintiff as Whitley maintained control of Plaintiff's right torso and Lemon maintained control of Plaintiff's left torso. (Id.). Plaintiff was escorted to medical screening in an arm-bar hold due to his continued resistance. (Id. at ¶ 20). According to his medical evaluation, Plaintiff suffered a cut above his eye. (Id. at ¶ 21).

Due to Plaintiff's complaints regarding his head or consciousness, he was transported to the local emergency room for further evaluation. (Id. at ¶ 22). According to Mitchell, Plaintiff was determined to be without any injury at the local hospital. (Id.). Following the incident, Plaintiff declined protective custody. (Id. at ¶ 23). Lieutenant Tim Reynolds investigated the use of force incident. Reynolds collected and reviewed the witness statements and reviewed the photographs, and he concluded that only the amount of force used was necessary to achieve the proper correctional objective. (Id. at ¶¶ 24-25). Assistant Superintendent Ken Beaver reviewed and approved Reynolds' report on May 22, 2014. (Id. at ¶ 26). Beaver noted that it was unclear how Plaintiff's eye was cut, but Beaver concluded that the strike by officer Lemon was within policy and reasonable given the threat perceived from Plaintiff. (Id.). Following Beaver's approval, Mitchell also reviewed and approved the use of force on May 28, 2014. (Id. at ¶ 27). Mitchell concurred with Beaver's conclusions and added that the amount of force used by Lemon and other staff appeared necessary and reasonable given the threat posed by Plaintiff. (Id.; Ex. B at 2).

5

Mitchell states that, in his opinion and based on his knowledge, training and experience, all staff actions appeared to be appropriate measures to stop Plaintiff, secure Plaintiff, and prevent a potential assault of Defendant Lemon. (Id. at ¶ 28). Mitchell continues that Lemon's strike followed the proper measures per the use of force continuum and NCDPS policy and all witness statements concurred regarding Plaintiff's behavior and non-compliance. (Id.). The use of force, according to Mitchell, was appropriate under the circumstances and was minimal and justified, without malicious or sadistic intent, and no more force than necessary was used by staff to bring Plaintiff into compliance with the officers' orders. (Id. at ¶ 30).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson,

6

477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted,

7

and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

The Court denies Defendants' motions for summary judgment. Defendants' evidence offered to support the summary judgment motions suffers from various flaws that preclude summary judgment. That is, in support of their summary judgment motions, Defendants submit incident reports, witness statements, and only the affidavit of non-party David Mitchell, who was not present when the incident occurred, in which Mitchell opines as a legal conclusion that excessive force was not used. First, an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4) (emphasis added). Mitchell's statements as to what happened during the alleged excessive force incident are not admissible because Mitchell simply was not present when the incident occurred. That is, Mitchell's statements as to what happened during the alleged incident are not based on his personal knowledge. Rather, he merely recites the statements of the officers who were present during the incident as to what happened. This is inadmissible hearsay. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory or based upon hearsay.") (citations omitted).

The Court further observes that, as to any legal conclusions made by Mitchell in his affidavit with regard to use of force, such as his legal conclusion that Defendants Lemon and Whitley did not use excessive force against Plaintiff, those legal conclusions are also not

8

admissible on summary judgment. See United States v. Perkins, 470 F.3d 150, 157 (4th Cir. 2006) (where an arrestee alleged that officers used excessive force, the testimony of the investigating officers who were not present when the incident occurred, and who testified as to the reasonableness of the officer who used the force, did not satisfy the personal knowledge requirement for the admissibility of lay opinion testimony); Parker v. Butler, No. 7:12-CV-03503-RDP, 2014 WL 3566516, at 6 n.3 (N.D. Ala. July 18, 2014) ("Whether or not one of the Defendants violated Plaintiff's right to be free from excessive force is a legal conclusion outside the purview of admissible testimony from either a lay or expert witness.").

Because the Court cannot consider Mitchell's affidavit recounting the facts of the incident of alleged excessive force, this leaves only the unsworn incident reports and witness statements submitted by the other officers to support Defendants' summary judgment motion as to Plaintiff's excessive claim. None of these individuals, however, has submitted an affidavit in support of summary judgment. See Adams v. Bouchard, 591 F. Supp. 2d 1191, 1204 (W.D. Okla. 2008) ("Critically absent from Defendants' summary judgment record is an affidavit or declaration made under penalty of perjury from either [of the two defendants alleged to have used excessive force against the plaintiff]."). In the absence of affidavits from the officers who have personal knowledge of the alleged excessive force incident, these incident reports are not admissible because they are based on hearsay.[1] See Bracey v. Herringa, 466 F.2d 702, 705 (7th

---

[1] The Court further observes that, in his memorandum in support of his own summary judgment motion, Defendant Whitley assumes the truth of the officers' witness statements and disregards the truth of Plaintiff's own witness statement. That is, Defendant Whitley argues that "this Court can easily conclude there was a need for force, and Defendant notes that [a]t least two witness statements corroborate that Plaintiff moved toward Defendant Lemon in attempts to assault him and that Plaintiff threatened Lemon." (Doc. No. 41 at 12). However, Plaintiff's own witness statement contradicts Defendants' version of the facts, as he denies that he was attempting to assault Lemon before Lemon and Whitley used force against him. See (Doc. No. 40-2 at 19).

Cir. 1972) ("We conclude that it was error for the district court to accept in support of the defendants' motion for summary judgment prison records which included the self-serving statements of the defendants themselves as well as statements of other prison guards."); see also Pommer v. Vaughn, No. 3:07cv537, 2009 WL 1490570, at *2 (D. Conn. May 27, 2009) ("[C]ourts examining incident reports in excessive force cases have found such reports to be inadmissible under Rule 803(6) because they are self-serving and lack indicia of reliability."); Mahone v. Pierce Cnty., No. C14-5665 BHS-KLS, 2015 WL 9311608, at *2 (W.D. Wash. Nov. 20, 2015), report and recommendation adopted, No. C14-5665 BHS-KLS, 2015 WL 9303485 (W.D. Wash. Dec. 22, 2015) ("The Court cannot consider the content of the incident reports because the affidavit submitted is not made on the personal knowledge of an affiant who is competent to testify to the matters stated therein. See FED. R. CIV. P. 56(e). Here, defense counsel can attest that the reports exist and that the copies presented are true and correct copies, but he is not competent to testify as to the content of the unsworn reports."); Kokoska v. City of Hartford, No. 3:12-CV-01111 WIG, 2014 WL 4724875, at *3 (D. Conn. Sept. 23, 2014) ("Recognizing the potential for self-serving statements by officers involved in excessive force incidents, courts in this circuit have generally found that their incident reports were inadmissible under Rule 803(6) because of the lack of indicia of reliability.").

The Court further notes that, although Plaintiff did not respond to either summary judgment motion, the Complaint itself is verified. A verified complaint "is the equivalent of an

---

Determining that one witness is credible over another is not appropriate on summary judgment, absent evidence that so clearly contradicts one person's version of the facts that no jury could find in favor of that witness. What happened before Defendants Lemon and Whitley used force against Plaintiff is clearly contested in this action, and the Court cannot conclude that no reasonable jury would believe Plaintiff's version of the facts.

opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (citing Davis v. Zahradnick, 600 F.2d 458, 459-60 (4th Cir. 1979) (summary judgment was improper where the inmate plaintiff alleged in a verified complaint that a prison guard watched a fellow inmate assault the plaintiff and did not intervene to stop the assault, despite conflicting affidavits from the prison guard and others)). In the Complaint, Plaintiff has alleged, under penalty of perjury, that Defendant Lemon "used excessive force by punching Michael Harper in the face when Michael Harper was not acting disruptive or aggressive" and that Defendant Whitley "used excessive force by stomping and kicking Michael Harper in the side and back repeatedly, and slamming plaintiff Michael Harper's head into the cement floor when Michael Harper was not acting disruptive or aggressive and while he was incapacitated by Defendant Sgt. Terry Lemons' punch to the face." (Doc. No. 1 at 6). These allegations are enough to raise a genuine issue of material fact as to whether Defendants used excessive force against Plaintiff. Furthermore, although it is undisputed that Plaintiff's injuries were minimal, Defendants have admitted on summary judgment that Plaintiff suffered from, at least, a laceration over one eye following the incident.

Finally, the Court notes that Defendants also raise qualified immunity as a defense. In considering qualified immunity on summary judgment, the Court takes as true Plaintiff's allegations and construes them in the light most favorable to Plaintiff. See Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008). "[S]ummary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." Vathekan v. Prince George's Cnty., 154 F.3d 173, 180 (4th Cir. 1998). Here, according to Plaintiff's version of events, both Defendants Lemon and Whitley used force

11

against Plaintiff while Plaintiff was neither resisting nor acting disruptive. The Court finds that Defendants are not entitled to qualified immunity.

In conclusion, because there is a genuine issue of material fact as to whether Defendants Lemon and Whitley used excessive force against Plaintiff, Defendants' summary judgment motions are both denied.[2]

## IV. CONCLUSION

For the reasons stated herein, the Court denies Defendants' summary judgment motions.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions for Summary Judgment, (Doc. No. 39; 47), are both **DENIED**

Frank D. Whitney
Chief United States District Judge

---

[2] The Court, therefore, will make inquiry into appointing counsel for Plaintiff at this stage in the proceedings.